Thank you. May it please the court. My name is Scott Dattin. I'm Leonard Lawson's attorney in this matter. This is not just a standard suppression case, and respectfully, I have to disagree with the government that my arguments were rendered moot by the Supreme Court's decision in United States v. Grubbs because I think in Grubbs the issue is whether or not the conditions were in the warrant or were communicated to the defendant. And here we have a situation in which the conditions in an anticipatory warrant were clearly stated in the warrant itself. So, in a broad sense, the issue is whether or not the police have to conform their actions to the conditions that are in the warrant. They requested the conditions, the conditions were placed in the warrant, and then this tracking device or electronic device malfunctioned while the package was still under police control. What I have trouble with at the outset here, these conditions have nothing to do with the issue of probable cause. Fair to say? Where that package goes, goes probable cause. That's a simple, maybe an oversimplification, but you understand what I'm saying. Yes, I do. So the conditions themselves really don't relate to the reasonableness of the search, the area to be searched, the specificity of the search, this was a seizure authorization, and so forth. What compels the court, putting aside the issue of exigent circumstances for a moment, what would compel the court to suppress this evidence? The fact that the government, the law enforcement asked for these conditions. Understandably. And why? Is this a common, if I may ask, is this sort of language in a warrant application and a warrant itself, is this common? Have you seen it before? I think I've seen it before. I don't know how common it is. It addresses certain strategic considerations, not Fourth Amendment considerations. I agree. But if it's a court order, if the court is to have any force at all, if the warrant's any good, don't the police have to conform to the conditions they requested? Then you have the attendant circumstances here. The device malfunctioned, quite obviously. Everything the police officers did otherwise seemed reasonable. When they did enter the premises, they seized the package, secured the area, went out and got a search warrant. This just doesn't seem, I hate to cite Leon because the parties haven't really dealt with it, but it's sort of a Leon common sense exception. This is what we want the officers to do. They weren't responsible for the malfunction. Why suppress the evidence? Because they could have solved the problem by not delivering the package, by saying, well, we can deliver it later. Let's either fix this electronic device and then we'll know exactly what's going on and we can conform to the conditions in the warrant. Or they could get a new warrant before they went in. They had plenty of time to do either one. Let me ask a variation of Judge Jerry's question. Let's assume that there's no warrant. And the reason for my assumption is that I want to assume that what happened is not described as one of the conditions in the warrant. Condition two in the warrant says fail to transmit. And I understand the government's arguing, well, that means malfunctions. But let's assume that I'm going to read it narrowly. And it didn't fail to transmit. The problem was it transmitted constantly. So I'm going to assume for purposes of my question, there is no warrant authorizing entry and seizure. What other basis would the government have for the entry and seizure? I suppose that's a question better asked of the government. I'm setting it up. So I assume the government's listening. But I would say none. They delivered the package. They created the exigent circumstances. Well, they can argue exigent circumstances. Of course, but they created the exigent circumstances by delivering the package. Okay, but along those lines, let's step back. There's no dispute that this package was addressed to a particular address and that it contained drugs, correct? Correct. Okay, so there's at least reasonable suspicion that the recipient, unless there's a typo in the address, is part of some drug transaction, correct? Yes. Okay, so it gets to the addressed house, and it gets taken from that house, not given back to the FedEx, supposed FedEx person, and say, whoa, whoa, we don't know where this is coming from. It's not for us. They take control of it. So at that point, why isn't there at least reasonable suspicion, if not probable cause, to believe that the person who's taken possession of this box full of drugs is part of this drug conspiracy or drug activity sufficient to justify the actions that went on because there's clearly two elements in this warrant that were addressed by the magistrate judge. One is where the package went and destruction of evidence. And so both elements are at risk in this moving transaction. So why, aside from exigent circumstances, why just on the face of it isn't there? I'm not going to make the argument for the government. I'm just trying to understand where the limits are. Well, I suppose that's the question here. Where are the limits? If the government asks for conditions, shouldn't they be required? We're stepping back if there's no warrant. I'm going back to where Judge Fletcher was. The woman who picked up the package was Mr. Lawson's co-defendant. She picked up the package from the Stella Place address, took it to another address, and almost immediately left and was arrested. The package continued to transmit. But with no warrant, I don't know. There's no reason to believe that the destruction of evidence was imminent. There was nothing going on in the house. The government had to go in the house to find out whether or not there was someone else in there or where the package was in there. So it had to be a warrantless search. And they created the conditions. They could have stopped her when she had the package. They did stop her after she delivered the package. Well, they wanted to see where it was going. Okay. If I don't hear from the government, you've got a lot of time to respond. May it please the Court, my name is James Barkley, representing the United States on this appeal. Your Honor, visiting from New York, with regard to your question about whether the conditions are common, in my experience as a prosecutor in Alaska for 17 years, they are common. The same language is used in obtaining this very type of anticipatory warrant from state judges. So these conditions are an attempt, under the analysis set out by the Supreme Court in Grubbs, to reasonably predict when probable cause will exist. When will the package actually get to the destined location? And because it's so foreseeable that people will have it delivered to the place to which the box is addressed and then take it to another place to see whether they're being followed by law enforcement, that was grafted into this language over the years to take into account that contingency. I have no difficulty with that. That, to me, is a standard anticipatory warrant language. Yes, Your Honor. What I was addressing was the other conditions. Why do we have to wait two hours or four hours? Why do we have to wait, for that matter, for the device, if it had worked properly, to signal that the package had been opened? I know the answers to that. The answers are strategic in the interest of law enforcement. They have nothing to do with the authority under the Fourth Amendment to conduct the search. That's my point. Yes, Your Honor. That is the government's view, is that the particularity requirement in the Fourth Amendment, as stated by Grubbs, only applies to two things, and it doesn't apply to conditions preceding dealing with the execution of the warrant itself. Only the items to be seized and the place to be searched. Assuming, then, for the purposes of my question, that some of the conditions in the warrant actually are not required by the Fourth Amendment, nonetheless, we have the warrant as written. Yes. Assume, I don't think you want to concede this, but assume for purposes of my question that Condition 2, which says that the ability to go in is triggered by no transmission at all, Yes. that that doesn't cover the situation where instead of having no transmission, you've got continuous transmission. And assume, therefore, that there's nothing in the warrant that authorizes the entry and that we're, therefore, dealing in a warrantless situation. How can you justify the entry and the seizure? Because the package was surveilled continuously by law enforcement visibly. So I'm going to assume for purposes of the Court's hypothetical that unlike in this situation, the alarm is not emitting at all from the package. In this situation, it is, right? It is, but it's alerting to a condition which law enforcement almost certainly knows is incorrect. It's saying that the box is open, but there's still a tone telling law enforcement whether the package is in a house or in a vehicle that they're following. I've got that. So I would go so far with your hypothetical, Your Honor, as to assume that there's no tone at all coming from the package. No, no. Stay with the facts, please. There is a tone coming from the package. There is a tone. Stay with my reading of the warrant. The warrant says on Condition 2 you are allowed entry if there's nothing coming from the package. Yes. So I'm reading that this warrant is not authorizing this entry. What other basis do you have for authorizing the entry and seizure? Probable cause because the package has been delivered to the residence as addressed and then followed to the next address, the second address. But can you answer solely based on probable cause? No. I was going to address the other, the second factor. I apologize. I'll get to the point. Probable cause and exigent circumstances. So you need an exigent circumstances? Yes, Your Honor. Under your view of the warrant, absolutely. Okay. And they are? They are, under three decisions of this court, variations on the formula constituting exigent circumstances. First, the protection of evidence. The magistrate court specifically found that it was imperative that the entry be made at the time that it was, and that is not a clearly erroneous finding under the facts of this record. I don't want to engage in a debate with you, but permit me one more. What was imperative about it? Well, there was the possibility of the imminent destruction of the package itself. So anytime we deliver a contraband, we don't need a warrant because that possibility exists. If the possibility equals the exigency, that's essentially what you're saying, without any independent evidence that they are aware, for example, that law enforcement is on to them or something of that sort, if the mere possibility equals the exigency, we don't need a warrant. Well, that's not what happened in this case, Your Honor. Exigency is always determined by the totality of the circumstances. And they are? And they are in addition to simply having the package having been delivered. First of all, clear indications that the co-conspirator, Ms. Val Carcel, and everyone else working with her, including Mr. Lawson, knew that the game was afoot. When the package goes to the first address, the DEA agent dressed as a FedEx driver is standing there, there's a cell phone call, comes to the person taking the box, and he says, I think your package is here, or words to that effect. So now there are people aware that the package is supposed to be delivered, and this is why the Magistrate Court felt that it was imperative to continue with the delivery and not abort at that time. Secondly, now the package goes to address number two, where it goes in the house, and now three minutes later, the woman comes out of the house and drives away. Here, the additional agency besides the package being in there is that now she has been stopped. She's not coming back. She left the package and she's not coming back. At some point, where that point is, it's difficult to define in terms of hours or the mere passage of time, but at some point, the people in the house are going to wonder what happened to her. Did she run out for cigarettes? Why hasn't she come back? Third, Your Honor, in a somewhat ironic factual underpinning to the case, the malfunction itself now has caused uncertainty as to whether the package has been opened. In the attempt to predict the contingency that someone opens the box and the alarm is now indicating that the box has been opened, the evidence, if you will, is more in jeopardy than if the package had simply been delivered, it's impossible to tell now because of the malfunction. The agents literally don't know whether it's really opened or not because they've had a false tone from the beginning indicating that it's opened. But because it is continuing to transmit, they know that at least the transmitter is still there. Yes. Unlike the situation in Contingency 2 where it's not transmitting, and because it's not transmitting, they have no idea where it is. So they know the package went into the house. They know that the transmitter is still in the house. They don't know whether it's been opened. But destruction of evidence tends to happen only when the person receiving the package knows or has a strong reason to suspect that somebody is after them. And the only evidence we have that would allow us to infer that they know somebody is after them is that the woman doesn't come back. Yes, Your Honor. Although that's pretty slender evidence to suspect that they're going to say, whoops, hey, we're in trouble because she left and she hasn't come back. And, of course, the police are in a position so she's not going to make any phone calls. They've got her in custody. How long would it have taken for the observers, they see it go into the second house, they know that it's malfunctioned, how long would it have taken them to get a warrant, a new warrant? I don't think there was any testimony as to how long it would have taken them to get the second warrant, Your Honor, but the testimony was as to whether at the first residence they could have gone back and gotten a warrant, that it would have involved danger because of the imminence of the phone call and the prompt return of the co-conspirator to pick up the package. And that's not as imminent a factor in the second one. However, at the second address, I should say. But in addition, in the totality analysis, in addition... Do the best you can with the record. I'm trying to figure out. As in circumstances, if it's going to take me three days to get the warrant, I'm much more sympathetic to the police going in than if it's going to take an hour and a half because they're in a position to surround, surveil the house. They know because the sound is transmitting that at least the transmitter has remained in the house. And unless somebody leaves the house, they're pretty sure that whatever was delivered in the package, not only the transmitter but the fake drugs, are there. I'm trying to figure out, okay, what's the hurry and how hurried should there be? So can you help me out in terms of how long it was likely to take to get that warrant, the second warrant, the one that wasn't gotten but the one that could have been gotten? Well, Your Honor, it would have... The only testimony that I can recall that's in this record, because there was a trial also and the trial testimony is not in the record, but the only testimony that I can recall is that it would have taken long enough to jeopardize the extra delivery fee paid for. That is in the record by the magistrate court. This was paid for by the sender to make sure that it was delivered same-day delivery. This was paid an extra premium for delivery that same day. I think you're in a different time sequence. We're talking about after the package was delivered. We don't really have to speculate about how long it would have taken because they did get another warrant. They did get a search warrant. They got a search warrant, yes, Your Honor. How long did that take? Four hours. The testimony in the record is that that was because they attempted to get it more quickly and the state court magistrate wanted the officer, Officer Greg, in person to swear out that affidavit for that search warrant rather than another officer, Officer Dahl, who left the scene during the protective sweep. And so in deference to that request, the person who was essentially the case agent, taking all of the evidence from everyone at the scene, left the scene and finished the swearing of the search warrant out. And the magistrate in that circumstance, saying, I want him in person, knows that the premises are now being controlled. Yes. So he's not in any hurry. Yes. What's the evidence, if any, that the drugs couldn't have been disposed of by flushing down the toilet or whatever? In other words, that they could have gotten rid of the evidence without leaving the house? The package, in fact, was never opened. This was only discovered when it was retrieved. Well, I'm assuming that destruction of evidence is the second prong to the analysis or the concern here. So what's the evidence that you're saying? They don't know whether the signal means that the box has actually been opened or not. Okay, if it's been opened, then the only fear that would justify going in at that point is that they're going to destroy it, the evidence. So is the evidence the kind that could be destroyed? It's not just the evidence in the form of the package itself that is of concern in the agency analysis, Your Honor, but it's also that, for example, if the package was opened, there is a theft detection powder, it's called, inside the package that people end up getting on their fingers sometimes that's visible under black light. There is also the possibility of fingerprints being obtained from the box as it's handled, mangled, whatever attempts might be to hide it. But the exigency also takes into account the possible flight of people who know that now they have been... Okay, I understand that. But this isn't the first case of this sort, at least I've heard, and I think my colleagues as well. And there are cases where they're literally going in because they've caught the people flushing the stuff down the toilet. So is this one of those kinds of cases? Or the nature of the drugs and the packaging and everything else is that that wasn't what they were concerned about, it's these other things you're talking about. Well, it is a concern because of the malfunction that... The drugs, could they be flushed down the toilet? Yes, they could, Your Honor. Okay, that's my question. I've got a second question. Well, what was delivered in the package could have been flushed down the toilet, but those weren't the drugs. No. They had the drugs. Yes. So if we're saying you guys flushed the harmless powder down the toilet, I have the drugs, I think you guys still have a pretty good case. Maybe a stronger case. Yes. So flushing it down the toilet doesn't necessarily hurt you guys. I thought there was still some. And I don't think... Wasn't there some in the... There was still some. Yes, Your Honor. It is the policy of DEA in our district anyway to leave a representative sample of a controlled substance in the box. May I just follow up on the package itself? I realize it wasn't opened. Yes. But, of course, the agents or officers on the exterior didn't know what was going on with the package. Is there anything in the record that you can tell us about the condition of the package or vis-à-vis the repackaging? Is there any reason to believe that an individual opening that package would, upon sight, be able to make a determination that there had been some sort of an intrusion? Is there anything in the record along those lines? No. So really all we have is the fact that the woman was arrested, a circumstance brought on by the officers themselves, of course, and I don't mean to sound critical. And there's no evidence in the record that post her arrest there was any attempt, cell phone or otherwise, to reach her by any third person. Fair enough? Fair enough. So it's the fact that she was arrested, really, is what it comes down to. Well, she also related to the officers when she was arrested that there were other people at the house. Yes, her aunts or something like that. They ended up to be relatives of Mr. Lawson, yes. And with respect to opening the package and the dye getting onto the fingers. Yes. Well, he's not going to flush his fingers down the toilet. No. So destruction of evidence doesn't play into that. In fact, if the package has been opened and he has the stuff on his fingers, that's a good thing for you. Yes. Your Honor, it's not – I hesitate to rely too strongly on the literal term destruction of evidence, both as the Court has pointed out in terms of it being evidence per se, but also would argue that it's really an interference with a law – it's frustration of a law enforcement purpose. And that is a specific factor in terms of defining exigency under this Court's precedent. And I think we should interpret that broadly. And frustration of a law enforcement purpose really means frustration of putting a case together against these people. Yes. The entire – But I have trouble seeing how this is all that likely to frustrate that, given the things that we've just been going through. Well, one of the factors, again, listed in exigency is the risk of danger of the type of activity. The Court has to take into account under the totality, what is this package? For example, a number of the cases, Hotel and others, which dealt with anticipatory warrants in the circuit, dealt with child pornography packages being delivered. And the only condition preceding triggering was simply the delivery. There were none of these ancillary conditions that are discussed in this warrant. And the difference I would submit, Your Honor, is that there is very little danger, unless there are some other extraneous facts about the perpetrator at the door taking the package, very little risk of danger. But I know that it is certainly cocaine activity that was involved in this case, and that is a dangerous business. It is a business in which common sense and practical interpretation of the conditions of the warrant would indicate there is a risk to officers approaching or making entry to a residence like that. Okay. I got it. Thank you, Your Honor. Thank you. You've saved a little time. Thank you. Mr. Barkley's arguments reminded me of three points that I'd like to make. One is I think, Judge Geary, you articulated what I meant to say better than I did in your questions to Mr. Barkley. But you asked how long would it take to obtain a warrant. There was testimony that warrants can be obtained telephonically under these situations, either at the trial or at the suppression hearing. I don't remember which.  The telephonic warrant probably could have been attempted at least by the government, and it wasn't. And the third point would be destruction of evidence. One of the primary pieces of evidence was that the cocaine was originally shipped in these porcelain pans, and the sham drugs were put back in these porcelain pans, one of which was cracked by the FedEx man who originally opened the package. And these porcelain pans, of course, cannot be flushed down the toilet. They would exist even if they had succeeded in getting the sham drugs out and destroying the sham drugs. And, of course, one of the nice things about the government's theft detection powder is it doesn't wash off easily. So even while they're flushing, they still would have this powder on their hands if the package had ever been opened. No doubt in your mind, maybe this is an unfair question, that had the agents on the scene picked up the phone, apropos of your comment about telephone warrants and said, Your Honor, we have a problem. Our transmitter is transmitting, and it's doing nothing but transmitting. It's obviously not working. It was transmitting before the package went inside, and obviously, therefore, before it was opened. We'd like to go in and retrieve the package with your authority. Is there any question in your mind that the authority would be forthcoming? I imagine it would be, yes. I don't see any reason why the judge wouldn't grant the warrant, but that's the purpose of the Fourth Amendment, to have a judge decide whether or not there's authority for a search and seizure rather than having the police officers do it. And there's no room in your mind for a good faith exception here? Of course there's room for a good faith exception. I just don't think the police tried to do anything other than go in and get that package. Has the government argued, and I realize this is out of order, I may have missed it in the brief, has the government argued good faith exception in this case? No, Your Honor. And the government didn't do so because I believe footnote 7 in the Echigoyen opinion indicated that this court would not be receptive to that, at least insofar as one would use it to argue that an invalid warrantless entry could be saved. However, as to the warrant itself, it could be. The government chose, as a tactical matter, not to make the argument. It must rise or fall based on the warrant or warrantless entry. Okay. Thank you. Thank you. Unless there are other questions, I don't have anything to add. Okay. Thank you very much. Interesting case. Very interesting case. Thank both of you for careful arguments. Good. Thank you. A teachable moment in Alaska for your warrants, I guess. If Condition 2 turns into, from now forward, malfunction, I would not be at all surprised. It's a teachable moment for the insertion of signals as well. Okay. Thank both of you. United States v. Lawson, submitted for decision.
judges: Dearie, Fletcher, Fisher